IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 3:14-68-JFA |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| COREY JAY HAYGOOD ) | |
| _____) | |

This matter is before the court on the defendant's third motion,[1] through counsel, for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 97). Seeking compassionate release, the defendant states that his medical conditions, coupled with the ongoing COVID-19 pandemic, as well as the need for him to be released to care for his aging and infirm mother, all taken together, constitute extraordinary and compelling reasons for his immediate release.

The government opposes the defendant's motion, arguing that the defendant has not shown an extraordinary and compelling reason. The government also asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant replied to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which

---

[1] The defendant's first *pro se* motion for compassionate release (ECF No. 87) was denied without prejudice because he had not exhausted all his available remedies within the Bureau of Prisons. The defendant's second *pro se* motion (ECF No. 89) sought release to home confinement under the CARES Act which this court denied in part as it was without authority to do so under that Act. The remaining claims in the motion were denied as this court did not find that the defendant had presented an extraordinary and compelling reason for compassionate release (ECF No. 93, filed July 8, 2020).

1

follow, the defendant's motion is respectfully denied.

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the

>receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden

3

to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

### Exhaustion of Administrative Remedies

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all

4

administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

It appears to this court that the defendant has fully exhausted his administrative remedies, and the government concedes the same. Therefore, the court will proceed to review the matter on the merits.

## DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d

5

181, 185 (4th Cir. 2021)).

### I. *The Defendant's Medical Conditions*

In the defendant's earlier motion for compassionate release (ECF No. 89), he contended that he had experienced spontaneous pneumothorax, which is a lung problem that occurs when a part of lung filled with air bursts open and the air is allowed to enter the thoracic cavity, thus partially collapsing the lung. The defendant was treated surgically for the collapsed lung and recovered. This court denied relief on the motion finding no extraordinary and compelling reason for compassionate release.

In his present motion, the defendant avers that he has had a second collapsed lung which was also treated with surgery. The defendant argues that he has experienced continued medical problems including shortness of breath and that he struggles with tasks that cause heavy breathing.

Additionally, the defendant raises yet a new ground not raised in his earlier motions: He has a history of smoking, although he has not smoked in the last six years. Finally, the defendant has retained a private physician who has examined the defendant's medical records, but who has not conducted a personal physical examination of the defendant. That physician offers his opinion that the defendant "likely" suffers from hypertension, one of the diseases identified by the Centers for Disease Control that might put people at increased risk of severe illness from COVID-19.[2]

---

[2] It bears mention that when the defendant was sentenced in 2014, the Presentence Report stated that the defendant was in good physical health, he was not under the care of a physician, and was not taking any prescribed medications. He denied a history of serious illness, injury or surgeries. During the pretrial

As indicated above, the government strongly contends that the defendant has not demonstrated extraordinary and compelling reasons for his release based upon his current medical conditions. Although the court determined in the initial motion that the defendant has not met his burden, the court is now of the opinion that these medical conditions, taken collectively, do indicate that the defendant has demonstrated extraordinary and compelling reasons for his immediate release.

Regarding the need to care for his mother—who is currently experiencing medical problems herself—this issue is more problematic. The defendant has filed several post-motion updates on his mother's condition which appears to worsen as the months go by. Although the defendant has other family members who could potentially care for the defendant's mother, these family members have other obligations and travel commitments that prevent them from providing day to day care.

Some courts have held that the need to care for an aging and infirm parent, standing alone, can constitute an extraordinary and compelling reason for a defendant's release. It bears mention, however, that many of the courts so holding have observed that such a defendant has served a substantial portion of his sentence, which is not the situation in regard to Mr. Haygood. Although doubtful that the need for the defendant to care for his aging mother, by itself, would constitute an extraordinary and compelling reason under the statute, such a determination is unnecessary here. As stated above, the court has concluded that the

---

investigation, the defendant's mother stated that the defendant sometimes suffered from back pain. Thus, all of the defendant's medical maladies appear to have arisen in the 8 years since he has been incarcerated.

7

defendant's current medical condition, combined with the COVID-19 pandemic, constitutes an extraordinary and compelling reason.

However, the court's inquiry does not end here. Under Fourth Circuit guidance, this court must now make an individualized assessment of the defendant's case, with specific attention to the factors under 18 U.S.C. § 3553(a), and also with particular review of the defendant's post-sentencing conduct while incarcerated.

*Factors Under § 3553(a)*

1. *Nature and Circumstances of the Offense.* The investigation leading up to the defendant's indictment involved the use of intercepted wiretap communications and information provided by cooperating witnesses. The investigation revealed that the defendant was supplied with quantities of cocaine and crack cocaine from various sources, which he then distributed to others. The defendant used his residence for purposes of manufacturing, distributing, and storing quantities of cocaine and crack cocaine. When his home was searched, agents found 42.3 grams of crack cocaine, 123.16 grams of cocaine, $11,939 in cash, digital scales, a Smith & Wesson .40 caliber handgun with a partially obliterated serial number, and a loaded magazine. Also in his possession was an AK-47 assault rifle, with a loaded magazine consisting of 11 rounds of ammunition. Also on the premises were additional rounds of this same ammunition.

The defendant was the sole individual named in a 5-count Indictment, filed February 5, 2014, which charged him with the following:

Count 1:    Conspiracy to possess with intent to distribute and distribution of 500 grams or more of cocaine and 28 grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846 and 851;

Count 2:    Possession with intent to distribute cocaine and 28 grams or more of a mixture or substance containing cocaine base (commonly known as "crack cocaine"), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C);

Count 3:    Possession of firearms in furtherance of drug trafficking crimes, those being possession with intent to distribute cocaine and cocaine base, in violation of 18 U.S.C. § 924(c)(1)(A)(i);

Count 4:    Having been convicted of a crime punishable by imprisonment for a term exceeding one year, did possess a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e); and

Count 5:    Maintaining a place, a residence for the purpose of manufacturing and distributing cocaine and cocaine base, in violation of 21 U.S.C. § 856(a)(1).

The defendant pleaded guilty pursuant to a written plea agreement (ECF No. 45) to Counts 1 and 3 referenced above. The government filed an Information pursuant to 21 U.S.C. § 851 (ECF No. 31) notifying the defendant that based upon the following convictions, he was subject to increased penalties:

A.    October 18, 2000: Richland County General Sessions -Manuft, Possess Other Sub Sch I, II, III, WITD-1st (PWID Marijuana). Arrest Date: November 6, 1999. Sentenced to 3 years suspended with probation for 1 year;

B.    May 22, 2003: General Sessions Number: 02-GS-32-02465. Manufacture, Distribute, Ice, Crank, Crack Cocaine 2nd. Sentenced to 1 year balance suspended to 1 year probation;

  C. April 18, 2007: PWID Crack Cocaine near school & PWID Crack Cocaine. Arrest date: November 9, 2011. Lexington County. Sentenced to 8 years suspended on 3 years and 4 years' probation, concurrent sentences; and

  D. June 15, 2011: Possession of Cocaine 1st. Richland County General Sessions Number: 10-GS-40-02911. Sentenced to 6 months or $500.00.

In Paragraph 9 of the Plea Agreement, the defendant stipulated that he had at least one prior felony drug conviction that had become final and that he agreed not to contest the Information that was filed in the case.

The Presentence Report (PSR) (ECF No. 64) prepared by the United States Probation Office determined that the defendant's total offense level was 34 and his criminal history category was VI. The defendant was determined to be a Career Offender within the meaning of United States Sentencing Guideline (USSG) § 4B1.1. His Guideline range was 262 to 327 months incarceration. The § 851 enhancement notice played no part in the defendant's sentencing because he was determined to be a Career Offender under the Guidelines.

On September 23, 2014, this court sentenced the defendant to a custodial term of 322 months, which consisted of 262 months (the low end of the Guideline range) as to Count 1 and 60 months as to Count 3, to run consecutive. A term of supervised release was set at 8 years.

The defendant did not appeal his conviction or sentence. The defendant did file a motion to vacate or correct his sentence pursuant to 28 U.S.C. § 2255. However, this court found that the motion was without merit on the claim of ineffective assistance of counsel and denied the motion (ECF No. 79).

2. *History and Characteristics of the Defendant*. The defendant is currently 43 years old. He has served approximately 96 months of his 322-month sentence. His projected release date is November 20, 2036. He is housed at FCI Coleman Low.

The defendant has an extensive criminal history and has repeatedly been arrested and convicted for criminal offenses since the age of 18. He has prior adult felony convictions for possession with intent to distribute marijuana; two counts of failure to stop for a blue light; possession of marijuana, second offense, possession with intent to distribute crack cocaine; possession with intent to distribute crack cocaine within the proximity of a school; possession of cocaine; and unlawful carrying of a pistol. The defendant has prior misdemeanor convictions for false information to police officers; three counts of simple possession of marijuana; simple possession of marijuana second offense; interference or hindering with law enforcement officers; criminal domestic violence; failure to comply with the lawful direction of police; and numerous traffic offenses. Because he was convicted of at least two controlled substance offenses, he was classified as a Career Offender pursuant to USSG § 4B1.1.

The defendant argues that all of his drug offenses are "non violent" and points out that he has not been convicted of using a firearm to threaten or hurt anyone. He also points out that when arrested, he made no attempt to escape or use either the AK-47 or the Smith & Wesson handgun then in his possession. While these statements are technically true, the fact remains that the defendant has a long string of convictions (including criminal domestic violence) that stretched back to the time when the defendant was 18 years of age.

These convictions yield a total of 13 criminal history points which were reduced by 4 points under USSG § 4A1.1(c) to 9 points. Two points were then added back because the defendant was under a criminal justice sentence when he committed the instant offense. This yielded a final total of 11 criminal points. A score of 11 would have resulted in a criminal history category of V, but the career offender designation raised it to VI.

Thus, although this court has considered the defendant's argument (that essentially suggests that his criminal history is overstated), the court respectfully rejects it. The defendant did not learn his lesson from the somewhat lenient sentences imposed (usually by the state court), on his many criminal convictions, some of which involved the distribution of crack cocaine, interfering with officers, committing criminal domestic violence, and illegal possession of a firearm. Also, as noted above, the defendant was on probation when he committed the instant offense.

The defendant is single and has five children. He experienced a very difficult and traumatic childhood, witnessing his father attempt to shoot his mother and then committing suicide. He left school during the eleventh grade, however, he can read and write proficiently.

Prior to his arrest, the defendant was self-employed for two years conducting business as an entertainment promoter.

*Post Sentencing Conduct*

Since his sentencing in this case in 2014, the defendant has had only one disciplinary infraction while incarcerated for failing to follow safety regulations. The

12

vocational/educational record reveals that he has taken courses in personal finance, drug therapy, typing, real estate investing, forklift safety, money smart, and related courses. He worked in the general maintenance department and plumbing at FCI Williamsburg and also enrolled in a plumbing apprenticeships. He completed the drug education program, volunteers teaching a creative writing class, and writes fiction.

The defendant's motion suggests that if he is released to home confinement, he will reside with his mother and a friend of his who owns a beauty salon will employ him to perform janitorial work.

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling

against the defendant's immediate release. As the government points out in its opposition memorandum, the defendant has an extensive criminal record. He used his residence to manufacture and distribute powerful controlled substances. He had in his possession multiple weapons, including an assault rifle. To release the defendant at this point after serving 96 months of a 322-month sentence would constitute a substantial danger to the community.

    7. *Need to Avoid Unwarranted Disparity*. The defendant was the sole individual named in this criminal case.

## II. *Additional Arguments by the Defendant*

The defendant contends that under the First Step Act, several of his predicate offenses for the § 851 enhancement would no longer qualify if the defendant were sentenced today. This argument is of no significance because, as indicated above, the defendant was not sentenced based upon the § 851 enhancement. Instead, his Guidelines were driven by his Career Offender status which called for a sentence greatly in excess of the mandatory minimum sentence of 10 years called for by the § 851 enhancement.

The defendant also argues that he has served very little time for his previous offenses and that the sentence of 6 years he has already served will suffice to convince him of the seriousness of his behavior. After carefully considering this argument, the court is not persuaded and rejects it. The fact that the defendant has committed crimes in the past, and received little, if any, prison time as a result, clearly demonstrates that he does not respect the law and that earlier efforts at leniency have been counterproductive. Thus, although the

14

court is fully aware of this argument, it is respectfully rejected.

## CONCLUSION

For the foregoing reasons, the court determines that, even assuming the defendant has demonstrated an extraordinary and compelling reason for his release due to his medical conditions, his release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. The motion is respectfully denied.[3] (ECF No. 97).

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

February 3, 2022  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge

---

[3] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")